# IN THE UNITED STATES DISTRICT COURT FOR TENNESSEE
# FOR THE MIDDLE DISTRICT
# NASHVILLE DIVISION

| | |
|---|---|
| **AUSTIN RYAN PETTY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | **Case No. _____** |
| ) | **Jury Demand (6)** |
| **BELLSOUTH TELECOMMUNICATIONS,** ) | |
| **LLC,** ) | |
| ) | |
| **Defendants.** ) | |

## COMPLAINT

Comes the Plaintiff, Austin Ryan Petty, and would state unto this Honorable Court as follows:

1. Plaintiff, Austin Ryan Petty, brings this action for violations of the Family and Medical Leave Act, 29 U.S.C. §2601 et. seq., for discrimination, interference and retaliation under this act. These violations were willful.

2. Plaintiff, Austin Ryan Petty, is a citizen and resident of Nashville, Davidson County, Tennessee.

3. Defendant, Bellsouth Telecommunications, LLC, is a Georgia corporation operating a telecommunication business in Nashville, Davidson County, Tennessee. The agent for service of process is CT Corporation System, 300 Montvue Road, Knoxville, TN 37919-5546.

4. Plaintiff, Austin Ryan Petty, was hired by Bellsouth Telecommunications, LLC on April 27, 2015, as a sales consultant in the retention department.

5. Plaintiff suffers from anxiety and depression.

6. Plaintiff is an individual who has a physical and/or mental impairment that substantially limits one or more major life activities, he has a record of such an impairment, and he has been regarded by the Defendant as having such an impairment.

7. In the summer of 2016, Plaintiff became ill and missed June 27 through June 29, 2016, from work due to depression and anxiety. Upon his return to work, Plaintiff filed for FMLA leave for these three days.

8. On July 8, 2016, Defendant acknowledged receipt of Plaintiff's request for 22.5 hours (3 days) of FMLA leave and requested Plaintiff provide a medical certification or other documentation by July 15, 2016 to support this absence.

9. Thereafter, on July 19, 2016, Defendant informally counseled Plaintiff about his attendance.

10. On July 21, 2016, Defendant sent the Employer's Response to Plaintiff's Request for Family Medical Leave and denied the leave for not providing the Certificate of the Health Care Provider by July 15, 2016. This notice claimed, in partially bold print, the following:

> This is your **Final Denial** regarding this absence period.

In very small non-bold print the form contained the following:

> If this request for FMLA has been final denied due to circumstances beyond the employee's control, AT & T FMLA Operations must be advised of the reason _and_ provided a valid medical certification form accompanied by proof of extenuating circumstances within 15 days of the date of final denial letter dated 7/21/2016. Claims of extenuating circumstances brought after this time frame will not be accepted and will remain final denied.

11. Plaintiff did not see this small print on the form and was not aware of the appeal process at this time.

12. On July 28, 2016, despite already informally counseling Plaintiff about his attendance, Defendant issued a Letter in Lieu of Suspension, in part, due to the days he requested FMLA leave.

2

13. Plaintiff's physician, Lynece Benton-Stewart, certified the need for FMLA leave on July 31, 2016. Plaintiff's physician certified Plaintiff's condition was permanent and long term and Plaintiff would need 3 days per month of intermittent leave and an additional 1 to 2 days per week for treatment.

14. On August 12, 2016, Defendant denied the request claiming the documentation provided did not provide circumstances explaining for the late submission.

15. Thereafter, Defendant approved his FMLA leave, but despite that approval, sent paperwork to Plaintiff requesting re-certification every time leave was requested, making the process difficult for Plaintiff to comply and to understand and the process not subject to any set standard or policy.

16. Plaintiff requested leave as follows:

| Date | Hours Requested |
|---|---|
| 08/12/2016 | 7.5 hours |
| 08/19/2016 | 7.5 hours |
| 08/22/2016 | 22.50 hours |
| 09/06/2016 | 7.5 hours |
| 09/08/2016 | 3.0 hours |
| 09/10/2016 | 7.5 hours |
| 09/15/2016 | 3.0 hours |
| 09/22-9/24/2016, 09/25/2016 | 24.75 hours |

Defendant requested re-certifications for all of these dates, including August 12, 2016, despite having received the physician's certification on July 31, 2016.

17. On September 25, 2016, Plaintiff's physician amended the certification to request FMLA leave of 8 days per month.

18. Despite this September 25, 2016 certification, Defendant once again requested Plaintiff recertify his leave for all times leave was requested, even when Plaintiff's request for

3

leave was less than the eight days per month. Recertifications were requested for the following FMLA dates:

| Date | Hours |
|---|---|
| 10/05 | 3.25 hours |
| 10/14 | 3.0 hours |
| 10/19 ó 10/25 | 34.25 hours |
| 10/27 | 7.5 hours |
| 10/31 | 1.0 hour |
| 11/04 | 2.75 hours |

19. It is believed Defendant accepted medical reports and/or notes from the treating physician as certification.

20. Further, Plaintiff through his physician requested leave beginning December 1, 2016 through January 4, 2017. Plaintiff's physician, Lynece Benton-Stewart, sent medical records to the employer requesting continuous FMLA leave and informing the employer that she had previously submitted FMLA paperwork and requesting that he take time off from work due to the aggressive state of the depression.

21. On December 8, 2016, Defendantøs FMLA Operations sent Plaintiff a letter informing him that they received his FMLA Eligibility Form on December 7, 2016, and that the form indicated that the absence would result in a claim for short term disability benefits under the Defendantøs disability plan, or a request for a leave of absence under the Companyøs leave of absence policy. The letter further informed Plaintiff that if the disability claim was approved, he would automatically receive FMLA approval. If the disability claim was denied, then he would have the right to request FMLA consideration.

22. Plaintiff's physician provided documentation and informed Defendant's disability leave department of the need for this leave and the physician was told this leave was approved.

23. Thereafter, the disability claim was denied.

4

24. Defendant should have accepted this disability claim and should have, likewise, approved the request for FMLA leave.

25. When Plaintiff returned from leave in January 2017, he was informed by a co-worker that his condition had been discussed by the co-worker and Plaintiff's direct supervisor and they had decided that when Plaintiff would call out for FMLA leave, that the co-worker or supervisor would drive to Plaintiff's house to pick him up.

26. On January 9, 2017, Defendant incorrectly informed Plaintiff that he had requested 450 hours of FMLA leave beginning January 1, 2017 and that failure to provide information by January 24, 2017 will result in a final denial of all or a part of his absence.

27. On January 9, 2017, Plaintiff was informed that while Defendant did receive a certification for FMLA, the "documentation received does not indicate that you were ill and/or incapacitated on the specific date(s) for which you were requesting FMLA consideration." Plaintiff was given until January 24, 2017 to correct this. It is believed Plaintiff's physician had already sent a letter to this effect.

28. On February 1, 2017, another physician, Dr. Lisa Webb, provided an additional certification requesting that Plaintiff be allowed one day off per week and one to two office visits per week. Dr. Webb provided another FMLA certification stating that Plaintiff suffered from disabling depression and anxiety and requested intermittent leave of 1 day per week for illness and time for treatment and stated he would need periodic breaks to manage anxiety. The certification was for absence plus treatment. This was faxed to the Defendant by the treating physician.

29. When Plaintiff contacted the Defendant to make sure it had received the paperwork, Defendant claimed it had not received the treating physician's paperwork. Because

5

of this, on February 10, 2017, Plaintiff re-faxed the FMLA paperwork to his employer and received a fax confirmation.

30. Plaintiff's request for FMLA leave was denied on February 14, 2017. Plaintiff told Defendant that he had the fax confirmation showing the FMLA paperwork had been sent to Defendant's FMLA department and Defendant replied that the fax confirmation did not mean anything.

31. On January 19, 2017, Plaintiff returned to his job and continued to work until April 6, 2017, when he was fired for unsatisfactory attendance, including many days for which he requested FMLA leave.

32. On April 7, 2017, Plaintiff's physician, Lynece Benton-Stewart, contacted the FMLA department at AT&T and was told Plaintiff was on FMLA leave until January 4, 2017, and he then got another approval.

33. Further, Defendant sent Plaintiff two FMLA Eligibility Forms (Ex. 1 & Ex. 2) containing type written under "Notes" that his absences were designated as FMLA Leave from November 30, 2016 through December 31, 2016 and from January 1, 2017 through March 2017.

34. Throughout the process, Plaintiff contacted the Defendant's FMLA and disability leave departments for clarification as to what was needed to approve his claim and Plaintiff was told they could not help him.

35. Plaintiff also contacted his direct supervisor for help to no avail.

36. Defendant interfered and discriminated against Plaintiff for taking FMLA leave, including, but not limited to, the following acts:

Not properly notifying Plaintiff of his rights under FMLA because Defendant confused the issues and made the process unintelligible (a) by requesting Plaintiff provide re-certifications

6

every time he took leave regardless of whether Defendant approved the leave without a re-certification; (b) by not properly notifying Plaintiff of the status of his FMLA leave claim by providing Plaintiff with paperwork showing that the days he requested FMLA leave were approved while also denying the claim for FMLA for the same days; (d) incorrectly providing Plaintiff information about his leave; and (e) requesting multiple recertifications.

37. Defendant retaliated, interfered and discriminated against Plaintiff for taking FMLA leave by informally counseling, issuing a Letter in Lieu of Suspension and ultimately firing Plaintiff for missing days for which he requested FMLA leave and violating his right to have the information of his medical condition obtained through his FMLA documents kept confidential pursuant to 29 CFR 825.500(g).

38. Defendant discriminated and retaliated against Plaintiff based upon his taking leave under the Family and Medical Leave Act, 29 U.S.C. § 2601 and interfered with his FMLA rights. Defendant knew or showed reckless disregard for whether its conduct was prohibited by the FMLA.

**WHEREFORE, PLAINTIFF PRAYS:**

1. Plaintiff, Austin Ryan Petty, be granted a judgment against the Defendant in the amount of $1,500,000.00 for lost back pay & benefits, lost front pay and liquidated damages.

2. That Defendant be ordered to reinstate Plaintiff, with all accumulated salary rights and benefits as if continuously employed from the date of his application and/or for a judgment for front pay, with all accumulated salary rights and benefits, including, but not limited to, health insurance benefits and long term and short term disability benefits.

3. Plaintiff further prays for punitive damages and for pre-judgment interest, attorney's fees, litigation costs, and the cost of this cause.

4. Plaintiff prays for a jury of six (6) to try this cause.

5. Plaintiff prays for such other further relief as may be necessary or appropriate.

Respectfully Submitted,

s/Ann Buntin Steiner
Ann Buntin Steiner, #11697
Steiner & Steiner, LLC
613 Woodland Street
Nashville, TN 37206
(615) 244-5063
*Attorney for Plaintiff, Austin Ryan Petty*